# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LORI MCINERNEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 18-CV-04073 |
| CAREERBUILDER, LLC, | ) ) Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lori McInerney brings her Amended Complaint alleging unlawful treatment at the hands of her employer, defendant CareerBuilder, LLC ("CareerBuilder"). McInerney asserts claims of a hostile work environment and retaliatory discharge in violation of Title VII of the 1964 Civil Rights Act, as well as state law claims of retaliatory discharge and intentional infliction of emotional distress. CareerBuilder moved to dismiss much of the basis for the Title VII claims, as well as the state law claims in their entirety. For the reasons set forth below, CareerBuilder's motion to dismiss is denied.

## BACKGROUND

In considering the motion to dismiss, the Court accepts the well pled facts in McInerney's Amended Complaint as true and draws all permissible inferences in favor of the plaintiff. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

McInerney worked for CareerBuilder for more than a decade. Am. Compl. ¶ 8, ECF No. 16. She was first hired in September 2002 and was ultimately fired in March 2017. At some point during that period, McInerney left CareerBuilder to raise her children. In September 2015, at the urging of CareerBuilder's Chief Financial Officer, McInerney returned as the Director of Strategic

Initiatives. The events presently at issue all arose between her return in late 2015 and her termination in early 2017.

Twice during this period, McInerney was subject to unwanted sexual advances by co-workers. On January 23, 2016, the last night of a customer event, McInerney and several others, CareerBuilder senior sales executives and CareerBuilder customers, were in a hotel bar. As McInerney bid the group goodnight, Douglas Hoodack, a senior sales executive, whispered to her, "I'm coming to your room." *Id.* ¶ 11. Under the impression he was joking, McInerney ignored the comment until she noticed that Hoodack was following behind. At this point, she also observed John Smith, CareerBuilder's Chief Sales Officer, give Hoodack a "smiling nod of approval." *Id.* ¶ 12. Hoodack continued to follow McInerney, repeating, "you know you want it, I'm coming to your room." *Id.* ¶ 3. McInerney protested, telling Hoodack "no" multiple times. Hoodack replied, "What the f*ck are you going to do? I'm not leaving." *Id.* ¶ 13. Eventually, a customer walked by and Hoodack relented.

The second episode took place at a sales team gathering after the CareerBuilder holiday party the following year.[1] In the presence of "several other employees and senior executives," Jason Lovelace, a senior sales executive, asked McInerney, "Would you f*ck a married guy like me?" *Id.* ¶ 16. McInerney left the party immediately.

---

[1] Although the Amended Complaint does not specify the date of this event, Plaintiff's Response in Opposition to Defendant's Motion to Dismiss states that, in relation to the incident with Hoodack, the party was "during the holiday season the next year." Pl.'s Resp. in Opp'n to Def.'s Mot. Dismiss at 4, ECF No. 24.

McInerney decided not to report either of these events to Human Resources. McInerney reasoned that "this behavior was very common at CareerBuilder"[2] and it was "common knowledge" that reporting such incidents led only to the employee being "fired or red-flagged as a problem employee." *Id.* ¶¶ 14, 17. Further, in both instances, McInerney had reason to believe that executives high in the corporate hierarchy were already aware of the behavior and no responsive action had been taken. McInerney figured that reporting would be "futile and detrimental to her career." *Id.* ¶ 14.

In addition to the unwanted sexual advances, a few months after her return to the company McInerney was encouraged to take a new position under Mary Delaney, a supervisor who "had a reputation for being particularly hard on female employees." *Id.* ¶¶ 19-21. In February 2016, CareerBuilder's Chief Financial Officer, Kevin Knapp, approached McInerney about a position as Director of Marketing of Aurico, a company owned by CareerBuilder. McInerney "expressed reservations" to Knapp, because McInerney would be reporting to Delaney. *Id.* ¶ 20. Knapp reassured McInerney, saying that her "job [would] never be in jeopardy" and that CareerBuilder would not tolerate abusive or discriminatory conduct. *Id.* ¶ 21. In the end, McInerney accepted the position.

According to McInerney, Delaney's "abusive and discriminatory conduct was pervasive" during their year working together. *Id.* ¶ 22. Delaney made disparaging comments about

---

[2] Specifically, McInerney describes another similar incident involving Hoodack and an unnamed female employee of CareerBuilder. Hoodack followed the employee to her hotel room and refused to leave until she screamed. Am. Compl. ¶ 15, ECF No. 16. This employee did not report the incident, but other CareerBuilder employees, including "upper management," became aware of the incident (the complaint does not explain how McInerney or others learned of this incident or when it allegedly occurred). *Id.* No action was taken by CareerBuilder. *Id.*

McInerney's status as a divorcee and single mother, as well as commenting on her physique—specifically her breasts. Notably, Delaney did not make similar comments to male employees.

Delaney also subjected male and female employees to different performance standards. Delaney repeatedly gave McInerney difficult and time-consuming tasks that were not part of her job duties. Male employees were not subject to the same treatment. According to McInerney, Delaney bragged about her efforts to make female employees cry and touted this practice as a means of "toughen[ing] up" the female employees. *Id.* ¶ 23. Specifically, in September 2016, Delaney told McInerney that she tried to make McInerney cry on multiple occasions and that she did not use this tactic with male employees. *Id.* ¶ 22.

These experiences took their toll. McInerney sought out medical attention for the stress-induced migraine headaches she began experiencing shortly after joining Delaney's team.[3] Initially, she discussed the problem with her general practitioner, who prescribed medications. Nonetheless, the headaches worsened—one especially acute migraine sent her to the emergency room. At the suggestion of the emergency room staff, she sought the attention of a neurologist, Dr. Armita Bijari. Dr. Bijari recommended that McInerney stop working for Delaney. As of filing the Amended Complaint, McInerney continues to take medicine to prevent and cope with her migraines.

McInerney discussed Delaney's conduct with multiple CareerBuilder personnel. She spoke with Ben Goldberg, Aurico's Chief Executive Officer, and Rosemary Haefner, CareerBuilder's

---

[3] McInerney also describes the similar experience of another female employee who, in an effort to deal with Delaney's behavior, sought out medical attention for stress-related symptoms. Am. Compl. ¶ 26, ECF No. 16. On McInerney's "information and belief," this female employee's doctor sent CareerBuilder's Human Resources Department a message stating that the employee should no longer work for Delaney. *Id.*

4

Chief Human Resources Officer. Both Goldberg and Haefner acknowledged Delaney's history of "abusive conduct towards women." *Id.* ¶ 28. In a February 2017 conversation, Haefner noted that she had previously spoken with Delaney about her "disparate treatment of female employees." *Id.* Haefner also stated that while Human Resources was aware of Delaney's current behavior, Delaney would not be punished due to her worth to the company.

On March 15, 2017, not long after these conversations, Haefner informed McInerney of her termination. McInerney notes that prior to the termination, she had received uniformly "above average" reviews. *Id.* ¶ 41. At the time of McInerney's termination, Haefner told her that CareerBuilder was eliminating several marketing positions, including the position held by McInerney. According to McInerney, the only marketing position eliminated was her own.

## DISCUSSION

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the complaint fails to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In the discrimination context, a complaint states a plausible claim if it identifies the "who, what, and when" of the discrimination. *See Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) ("A complaint that identified 'the type of discrimination' the plaintiff thought occurred, 'by whom, ... and when' was 'all [the plaintiff] needed to put in her complaint.'" (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir.

5

2010)). When well-pled, these facts provide "a reasonable expectation that discovery will reveal evidence supporting the allegations." *Id.*

In its Rule 12(b)(6) arguments, CareerBuilder does not attack McInerney's claims as such; rather, it targets the individual counts listed in the complaint and, at times, the individual facts underlying a count. As this Court has noted before, these are not the proper targets of a Rule 12(b)(6) motion. "Complaints plead claims, which is to say grievances." *ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016). Counts, by contrast, typically describe different legal theories by which the alleged facts purportedly give rise to liability and damages. *Lucas v. Vee Pak, Inc.*, 68 F.Supp.3d 870, 876-77 (N.D. Ill. 2014); *see also Mannes v. Ford Motor Co., Inc.*, No. 13 C 07381, 2014 WL 7332616, at *2 (N.D. Ill. Dec. 22, 2014); *Volling v. Antioch Rescue Squad*, 999 F.Supp.2d 991, 996-97, (N.D. Ill. 2013). While complaints must plead claims, they need not plead counts. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). Although McInerney's complaint includes three distinct counts—each of which sets forth a theory of liability—it includes only two claims: a claim alleging an abusive and discriminatory work environment and another alleging wrongful discharge. *See NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

CareerBuilder has not properly moved to dismiss either claim in its entirety and, as a result, the motion to dismiss is denied. The fatal incompleteness of the motion is evident in CareerBuilder's treatment of McInerney's Title VII count, which encompasses both claims. CareerBuilder's ultimate contention is that "all allegations that predate October 5, 2016 are time-

barred [and] should not be considered in support of Plaintiff's Title VII claim." Mem. Sup. Def.'s Mot. Dismiss at 3, ECF No. 19. CareerBuilder does not argue, however, that the post-October 5, 2016 allegations, which include part of McInerney's time working for Delaney and McInerney's termination, cannot plausibly support liability for an abusive and discriminatory workplace or wrongful termination. Indeed, CareerBuilder concedes that its motion does not assert a challenge to the adequacy of the pleading of McInerney's Title VII claims of hostile work environment and wrongful termination. Def.'s Reply in Supp. of Mot. Dismiss at 2, ECF No. 27.

What CareerBuilder seeks to do instead is to dismiss some of the facts—most specifically, those pertaining to the two episodes in which male executives made sexual advances to McInerney—alleged in support of the hostile work environment claim. But Rule 12(b)(6) authorizes the dismissal of claims, not evidentiary rulings about the relevance of specific allegations set forth in a complaint. As the Seventh Circuit has explained, that sort of winnowing of a claim properly occurs at summary judgment, not at the pleadings stage when the question is simply whether there are sufficient facts alleged to state a plausible claim for relief on some legal theory:

> A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief. Fortres Grand Corp. v. Warner Bros. Entm't Inc., 763 F.3d 696, 700 (7th Cir.2014) (quotation marks omitted) (applying Rule 12(b)(6)).
>
> Summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for "[p]artial [s]ummary [j]udgment" and require parties to "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a) (emphasis added). At the summary-judgment stage, the court can properly narrow the individual factual issues for trial by identifying the material disputes of fact that continue to exist.

*BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The relevance of evidence may also bear on the appropriate scope of discovery that is permitted in the case. *See Andersen v. Vill. of Glenview*, No. 17-CV-05761, 2018 WL 6192171, at *6 (N.D. Ill. Nov. 28, 2018) ("The viability of a particular theory may also affect the scope of discovery and may therefore be appropriately considered in that context."). But that is a question to consider in the context of a motion pursuant to Rule 26(c) (protective orders) or 37(a) (motions to compel), not Rule 12(b)(6).

In seeking only to carve out certain allegations as irrelevant or time-barred, CareerBuilder has not, in substance, moved to dismiss either claim. Accordingly, both survive. It follows that dismissal is also improper as to the state law counts because they are simply alternative theories of recovery that stem from the same fact allegations that give rise to McInerney's Title VII claims. At this stage, neither of McInerney's state law theories of retaliatory discharge and intentional infliction of emotional distress even had to be identified in the complaint, and given that the claims on which they are founded are going forward, Rule 12(b)(6) provides no basis to bar McInerney from pursuing her claims in the context of those state law theories.[4]

\* \* \*

---

[4] The same is true of CareerBuilder's request that the Court strike McInerney's request for punitive damages. "Rule 12(b)(6) is the avenue to seek dismissal of an insufficiently stated claim. However, a prayer for punitive damages is not a *claim* but instead only a *type of remedy* available when a plaintiff is successful on a claim. *Vincent v. Alden–Park Strathmoor, Inc.*, 948 N.E.2d 610, 615 (Ill. 2011). Therefore, Rule 12(b)(6) is inapplicable . . ." *Eldracher v. Honeywell, Inc.*, No. 14-CV-1414-JPG-DGW, 2015 WL 3419167, at *1 (S.D. Ill. May 28, 2015).

For the foregoing reasons, CareerBuilder's motion to dismiss is denied.

Date: December 3, 2019

John J. Tharp, Jr.
United States District Judge